THE MERRILL C. HART. THE A. C. CHENEY. THE SEMINOLE.

(Circuit Court of Appeals, Second Circuit. May 8, 1911.)

Nos. 242-244.

1. COLLISION (§ 75*)—LIGHTS—SAILING VESSELS IN TOW ALONGSIDE.

Rule 11 of the pilot rules, relating to the lights to be carried by barges and canal boats when towed alongside, does not apply to sailing vessels, which are governed by article 5 of the statutory rules for rivers and harbors, in Act June 7, 1897, c. 4, § 1, 30 Stat. 97 (U. S. Comp. St. 1901. p. 2877), which requires them to carry the regulation colored side lights.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 105-121; Dec. Dig. § 75.*]

2. COLLISION (§ 95*)—YACHT AND STATIONARY TUG WITH TOW ALONGSIDE—LIGHTS.

A collision near the center of the North River, about opposite Thirty-Second street, in the evening, between a yacht going down at a speed of about 12 knots and a tug and a schooner in tow on her starboard side. which were stationary, *held* due to the fault of all three vessels; the yacht being in fault for navigating without due care and for coming too close to the other vessels, which she supposed she was overtaking, without signaling, and the tug and tow because of the failure of the schooner to carry the side lights required by the rules, which misled the yacht, and the lights of the tug being obscured by the schooner and her deck load.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200-202; Dec. Dig. § 95.*]

Appeals from the District Court of the United States for the Southern District of New York.

Suits in admiralty for collision by John N. Robins, owner of the yacht Seminole, against the schooner Merrill C. Hart, Richard Dunn and others, claimants, and the steam tug A. C. Cheney, the Cornell Steamboat Company, claimant, and cross-libels by claimants of the Hart and Cheney against the Seminole. Decree against all three vessels, and cross-libelants appeal. Affirmed.

The controversies arose from a collision of the steam yacht Seminole with the schooner Merrill C. Hart and the tug A. C. Cheney. which had the schooner in tow. The collision occurred about 9:30 p. m. on August 5, 1907, near the center of the North River and about off Thirty-Second street, New York. The court below held all three vessels at fault and entered decrees accordingly. Appeals were taken

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

188 F.—4

by the claimants of tug and schooner. The opinion of the District Judge will be found in 162 Fed. 371.

Amos Van Etten, for appellant Cornell Steamboat Co.

James Forrester, for appellants Dunn and others.

C. S. Haight, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). [1] The opinion of the District Judge fully sets forth the details of the pleadings and the evidence. They need not be repeated here. The Cheney took the Hart in tow from anchorage at a place within anchorage limits somewhat above a point opposite Fourteenth street, then went down river a little, turning to the eastward below a stakeboat, the North. She had the schooner on her starboard side, and continued on a turning course till they again reached the anchorage grounds at a point not far from another stakeboat, the Eureka, where it was intended to make up the flotilla of which the Hart would form a part. At that time the tugboat Cordts with a long tow was maneuvering near the Eureka preparatory to turning and proceeding up the river. To give the Cordts time to move out of the way, the Cheney stopped in the water and waited several minutes—apparently at least 10 minutes. She and the Hart were then heading towards the Jersey shore, about N. W. Either while they were still lying there, or just as they started to move forward behind the Cordts' tow, then under way, the Seminole came into collision with the starboard bow of the Hart, and thereafter with the Cheney. The Seminole had come down the river from Nyack, had passed to the eastward of some war vessels at anchor off the lower part of Riverside Drive, and had then crossed over to the westward, with the intention of keeping on down the right-hand side of the channel. When about Fiftieth street she saw a vessel with two staff lights (the Cheney), but no other lights exhibited. As she drew nearer she assumed the vessel exhibiting these lights was a tug with a tow bound in her own direction, down the river. When she was very close, apparently this vessel turned across the course of the Seminole, which was expecting to overtake and pass her on the Seminole's port side. In reality the Cheney and Hart made no such turn, having, during the time the Seminole was coming diagonally down from a position off Fiftieth street, been lying with their starboard side turned towards her. No one on the Hart or the Cheney seems to have discovered the presence of the Seminole till she was almost in collision with them.

The Cheney's side lights were set and burning. The Hart had a white light in her rigging while at anchor, which she took down when picked up by the Cheney. Her sidelights were not lit at any time before collision. The District Judge held her in fault for not exhibiting them, and held the Cheney in fault for not seeing to it that she did so. From this decision the claimants of these two vessels appeal.

Article 5 of the rules enacted by Congress provides that:

"Sailing vessels under way or being towed shall carry the same lights as are prescribed by article 2 for a steam vessel under way, with the exception of the white lights mentioned therein, which they shall never carry."

Article 2 provides for the regulation colored lights. Manifestly the Hart failed to comply with this rule. This failure is sought to be excused by reference to the following rule of the board of supervising inspectors, approved by the Secretary of Commerce and Labor:

"Barges or canal boats towed alongside a steam vessel, if on the starboard side of said steam vessel, shall display a white light on her own starboard bow; and if on the port side of said steam vessel, shall display a white light on her own port bow."

[2] Since the Hart was neither a barge nor a canal boat, she was not covered by the provisions of this rule. We cannot find that her failure to comply with article 5 did not in any way contribute to the collision. On the contrary, we think it was one of the direct causes thereof. The schooner had a deck load about eight feet high. Including her freeboard and her furled sails, she formed an obstruction which effectually shut off the tug's starboard light from the view of vessels approaching on her starboard side. We do not doubt that if the schooner had displayed her green light, as the article required, the Seminole would have discovered that she and the Cheney were heading across the Seminole's course, instead of downstream, long before she did, and may assume that her navigation would have been modified accordingly. We concur, therefore, with the District Judge in the conclusion that the Hart was in fault for not displaying her colored lights, and that the Cheney was in fault for not directing her to do so. It was the master of the Cheney who ordered the Hart to take the white anchor light out of the rigging and put it on the starboard bow.

Without considering the other charges of fault against the Seminole, which the District Judge sustained, we fully concur in this excerpt from his opinion:

"The theory of the Seminole was that the Cheney and tow were at first bound down the river, and then suddenly changed to the westward and across the Seminole's bow, thus bringing about the collision. The Seminole's manœuvers, however, were not in conformity with such a theory. If the Seminole was an overtaking vessel and desired to pass, it was her duty to signal the Cheney and obtain an assent to such passing, but no signals were given."

We are satisfied that, misled by the failure of tug or tow to exhibit the proper light, the Seminole did believe she was overtaking a vessel bound in her own direction. Manifestly, however, she approached so close to the vessel she supposed she was overtaking that a sudden change of course by the latter would bring about a collision. But she should not have come so close to an overtaken vessel without signal. The overtaken vessel is not required to look behind before she changes her course, however abruptly. The rule which requires a signal from the overtaking vessel and assent from the other is intended to avoid just what, on the Seminole's theory, happened on this occasion. Moreover, we agree with the District Judge in the conclusion that her "navigation was not marked by the degree of caution that a fast vessel under the circumstances should have observed."

The decrees are affirmed, with interest and costs.