### THE NEW YORK CENTRAL NO. 28.

(Circuit Court of Appeals, Second Circuit.    March 24, 1919.)

#### No. 153.

1. COLLISION ⬚50—INLAND RULES—OVERTAKING VESSEL—"FINALLY PAST AND CLEAR."

An overtaking vessel, which had passed the one overtaken half or three-quarters of a mile before changing course, and was then 300 to 500 feet ahead, was "finally past and clear," within article 24 of the Inland Rules (Comp. St. § 7898), and relieved of the burden of keeping out of the way.

2. COLLISION ⬚102—OVERTAKING VESSELS—NEGLIGENT NAVIGATION.

A collision between a ferryboat and steam lighter, both passing down Hudson river, *held* due to faults of both vessels; the ferryboat, which was ahead, for unnecessarily changing her course across that of the lighter, and the latter for proceeding at full speed, without paying any attention to the passing signals and positions of the vessels ahead.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by the Erie Railroad Company, owner of the ferryboat Chautauqua, against the steam lighter New York Central No. 28; the New York Central Railroad Company, claimant. Decree for respondent, and libelant appeals. Modified.

Park & Mattison, of New York City (Samuel Park, of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (Dix W. Noel, of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

---

ROGERS, Circuit Judge. This suit is brought to recover damages occasioned by a collision which occurred on January 27, 1917, in the Hudson river between the ferryboat Chautauqua, owned by libelant, and the steam lighter New York Central No. 28, owned by the New York Central Railroad Company. The District Judge entered a decree dismissing the libel, on the ground that the Chautauqua was solely in fault.

It appears that the Chautauqua left Weehawken Cove at Seventeenth street, Hoboken, bound for her slip at the foot of Chambers street, New York. The tide was a strong ebb, the weather clear, and it was about 7 a. m. when the Chautauqua started on the trip. On her way down the river, and at about Pier 28 she overtook and passed lighter No. 28 going down on her port side on a parallel course. The Chautauqua was proceeding through the water faster than No. 28, which was making about 8 miles per hour. The Chautauqua passed the No. 28 on the Chautauqua's port side. When the Chautauqua was about 1,200 feet from her slip at Chambers street, the New York Central steam lighter No. 29, which was proceeding down the river ahead of the No. 28 and upon the port bow of the Chautauqua, without any signal, ported her wheel and changed her course across the bow of the Chautauqua, and between the Chautauqua and the steam tug Jersey Central, bound up the river below the Chautauqua, with a car float upon her port side. The Jersey Central was ahead of the Chautauqua and about 1,000 feet further down the river. The Chautauqua had previously exchanged a signal of two blasts with the Jersey Central coming up with a float on her port side. When No. 29 changed her course, to go between the Chautauqua and the Jersey Central, the engines of the Chautauqua were put at slow speed to avoid a collision with the No. 29, and the wheel of the Chautauqua was moved one or two spokes to starboard. The Jersey Central starboarded her wheel after an exchange of signals of two whistles with the Chautauqua, and was compelled to stop her engines in order to let No. 29 cross her bow. When the signals of two whistles were exchanged between the Chautauqua and the Jersey Central, the No. 28 was from 300 to 500 feet on the port quarter of the Chautauqua. The No. 28 kept on at full speed, apparently unmindful of the situation ahead of her, and especially of the No. 29 changing her course to starboard in order to go between the Chautauqua and the Jersey Central, compelling the Chautauqua to reduce her speed, until in the jaws of collision with the Chautauqua. The No. 28 stopped and reversed her engines, but too late to avoid a collision; the stem of the No. 28 coming into contact with the port side of the Chautauqua.

[1] The District Judge dismissed the libel on the ground that the Chautauqua was the overtaking vessel at the time she put her wheel slightly to starboard. He said:

"The Chautauqua was originally the overtaking vessel, and did not cease to be so under Inland Regulation No. 24 (Act June 7, 1897, c. 4, § 1, 30 Stat. 101 [Comp. St. § 7898]) until fully past and clear of No. 28, which she was not when she starboarded. Therefore I find her at fault."

The rule referred to may be found in the margin.[1]

This court is satisfied that the Chautauqua is not within the limitations of the inland rule, but had been relieved of the duty of keeping clear of No. 28; she being "finally past and clear" of that vessel when she starboarded. The answer of No. 28 admits this, for in the seventh article it states:

"No. 28 was a considerable distance ahead of the Chautauqua, but as the Chautauqua was a faster vessel than No. 28 she overtook and passed No. 28 when No. 28 was about off the Lackawanna Terminal at Hoboken. Stokes, the master of the No. 28, states that the Chautauqua was a faster boat than the No. 28 and she kept gaining on the No. 28."

And the testimony of the master of No. 28 supports the answer in this respect, as does all the other testimony in the case. The evidence shows that the Chautauqua passed No. 28 a half or three-quarters of a mile from the place of collision. So that we conclude that the Chautauqua was not, as the court below held, the overtaking vessel.

[2] The action of No. 29 in changing her course to starboard in order to go between the Chautauqua and the Jersey Central has been mentioned. This conduct on the part of No. 29 was atrocious. The testimony that it happened is not to be doubted. It is shown by the testimony of those on both the Chautauqua and the Jersey Central, and no one was called from No. 29 to contradict it. This conduct of the No. 29 made it necessary for the Chautauqua and the Jersey Central to slow up to avoid the No. 29, in cutting across the bows of both vessels.

The Chautauqua, however, is not without fault. As she was proceeding on her way down the river and was about opposite Pier 25, she altered her course to port and without warning to the vessels on her port side. The action of No. 29 in crossing the bow of the Chautauqua made it necessary for the latter to slow down, which she promptly did, but that it necessitated a change of course is not true. In fact, the change of course was not made until No. 29 had proceeded on her way. In starboarding her helm the Chautauqua directed her course, as we have said, across the bow of the vessels on her port side, including No. 28. In so doing the Chautauqua, then the overtaken vessel, did an unnecessary thing, and swung without warning or signal across the path of the oncoming No. 28. The result was a collision; the stem of No. 28 striking the Chautauqua just forward of amidships on the port side.

[1] "Art. 24. Notwithstanding anything contained in these rules every vessel, overtaking any other, shall keep out of the way of the overtaken vessel.

"Every vessel coming up with another vessel from any direction more than two points abaft her beam, that is, in such position, with reference to the vessel which she is overtaking that at night she would be unable to see either of that vessel's side lights, shall be deemed to be an overtaking vessel; and no subsequent alteration of the bearing between the two vessels shall make the overtaking vessel a crossing vessel within the meaning of these rules, or relieve her of the duty of keeping clear of the overtaken vessel until she is finally past and clear.

"As by day the overtaking vessel cannot always know with certainty whether she is forward of or abaft this direction from the other vessel, she should, if in doubt, assume that she is an overtaking vessel and keep out of the way."

We have not overlooked the fact that the Chautauqua denies a swing of more than two points. We think it probable she changed more than two points; but, if she changed only two points, it does not appear that even that change was necessary to avoid the Jersey Central.

It appears to us that No. 28 was also at fault. It is evident that she was at the time in charge of incompetent persons. There were three deckhands in or about the pilot house, who were in charge of her navigation, none of whom was a licensed man. A competent lookout upon the No. 28 would have paid some attention to the exchange of the signal of two whistles which the Chautauqua gave to the Jersey Central, and which the latter immediately answered; and a competent lookout would have observed the maneuver of No. 29 in crossing the bow of the Chautauqua and of the Jersey Central. But no one in charge of the navigation of No. 28, so far as the record discloses, paid any attention to the conditions existing in front of her, and she was allowed to continue on her course at full speed until the danger signals given by the Chautauqua warned her of the impending collision. · The mate, an unlicensed man, who was in the pilot house and in charge, says that he did not hear the exchange of whistles between the Chautauqua and the Jersey Central, and he did not see the No. 29 pass the bow of the Chautauqua, and that he did not change the course of the No. 28. No slow bells were given and her speed was not reduced until she was right in the jaws of the collision. He admitted that he knew nothing about the inspectors' rules or the United States statutes regarding navigation. When the signals were exchanged between the Chautauqua and the Jersey Central, No. 28 was within 300 or 500 feet from the port quarter of the Chautauqua. The situation was such as unquestionably made it the duty of No. 28 to stop and reverse, and if that had been done the collision might have been avoided. The language of the Supreme Court in The New York, 175 U. S. 187, 207, 20 Sup. Ct. 67, 74 (44 L. Ed. 126), is applicable to the facts of this case. The court said:

"The comments we have made upon the failure of the Conemaugh to stop and reverse are equally pertinent to the case of the New York. If she did not hear the whistles of the Conemaugh, she ought to have heard them; but, irrespective of this, there was enough to apprise her of her danger in pursuing her course with unabated speed. * * * Her conduct was inexcusable. The lesson that steam vessels must stop their engines in the presence of danger, or even of anticipated danger, is a hard one to learn; but the failure to do so has been the cause of the condemnation of so many vessels that it would seem that those repeated admonitions must ultimately have some effect. We cannot impress upon masters of steam vessels too insistently the necessity of caution in passing or crossing the course of other vessels in constricted channels."

The District Judge thought that in the situation in which No. 28 was placed she could not have safely starboarded on account of the Vigilant, nor safely ported on account of the Chautauqua. But, as we have already pointed out, her duty was to stop and reverse; this she did not do until it was too late. As both vessels were at fault the damages should be divided.

The cause is remanded to the District Court for the Southern District of New York, with directions to modify its decree in accordance

· with this opinion, and, as so modified, the decree is affirmed. Costs will be divided equally in the court below. In this court the appellant has the costs of this appeal.