## THE GEORGIA.

## THE ATHENS.

Circuit Court of Appeals, Second Circuit. April 4, 1927.

No. 231.

**1. Collision ⬗⇒90—Navigation on wrong side of river, in violation of East River statute, is fault not excused by custom or convenience.**

Navigation on wrong side of the East River, in violation of the East River statute, purpose of which is to keep waters near shore clear for vessels entering and leaving their piers, is a fault not excused by custom or convenience.

**2. Collision ⬗⇒51—Overtaking vessel is at fault in approaching so close to vessel ahead as to cause collision on latter's sudden change of course.**

An overtaking vessel is at fault if she approaches so close to vessel ahead that sudden change of course of the latter causes collision.

**3. Collision ⬗⇒95(2)—Tug entering congested area on wrong side of river against tide should have stopped to permit steamer traveling with tide to pass clear.**

Steam tug and tow, entering congested area in East River on wrong side of river, in violation of East River statute, and proceeding against tide, should have stopped and permitted steamer traveling with the tide on a course 45 degrees different from that of tug to pass clear.

**4. Collision ⬗⇒98—Collision when steam tug, after giving signal of starboard passage, stopped and sounded alarm, held fault of tug.**

Where steam tug, on wrong side of East River in violation of East River statute, after giving two-whistle signal indicating a starboard to starboard passage with steamer traveling on a course 45 degrees different from that of tug, suddenly stopped and blew alarm whistle, held, that resulting collision of tug and steamer, which promptly and properly reversed engines, was due solely to fault of tug.

Appeal from the District Court of the United States for the Eastern District of New York.

Cross-libels by the Lehigh Valley Railroad Company of New Jersey against the steamer Georgia, claimed by the Hartford & New York Transportation Company, and by the Hartford & New York Transportation Company against the steam tug Athens, claimed by the Lehigh Valley Railroad Company. From a decree holding both vessels liable, the Lehigh Valley Railroad Company appeals. Decree modified.

Foley & Martin, of New York City (William J. Martin, of New York City, of counsel), for Lehigh Valley, and the Athens.

Haight, Smith, Griffin & Deming, of New York City (Henry M. Hewitt and James McKown, Jr., both of New York City, of counsel), for Hartford & N. Y. Transp. Co.

Before MANTON, HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. On December 1, 1922, the steam tug Athens, with two car floats, both on her starboard side, navigated down the East River along the Brooklyn shore. The steamer Georgia, having left her pier, proceeded up the East River, passing underneath the Williamsburg Bridge on a course about midway between the Brooklyn piers and a government drill boat which was anchored about 800 feet off the foot of North Sixth street, Brooklyn. The distance between the bridge and the drill boat was about half a mile. The captain of the Georgia testified he passed under the Brooklyn Bridge at 4:55 and saw the car float bound either in or out of the railroad float bridges. He was unable to tell which, and slowed and stopped the engines of the Georgia, allowing her to run in the flood tide at about three knots. Thereupon he saw the red light of the tow, indicating that it was bound across the river toward the Manhattan shore. He continued to drift with the current after blowing one whistle to the tug. It was necessary to port the wheel in order to clear this tow. Just before the Georgia passed under the stern of this tow, the second tow, which proved to be the Athens, was seen showing her green light beyond the stern of the tow just passed on a course parallel to the Brooklyn piers between Manhattan creek and Bushwick inlet. The course of the Athens was about 45 degrees different from that of the Georgia. The Georgia blew two whistles to the Athens which were promptly replied to by two whistles of the Athens, indicating a starboard to starboard passage. When the bow of the Georgia cleared the stern of the first tow, which was the Pennsylvania Railroad No. 6, he turned the wheel hard astarboard and at the same time gave his engines a kick ahead for a few

seconds in order to give steerageway so that it would respond to the starboard wheel. Just as the Georgia was about to pass clear, the Athens stopped and blew alarm whistles. The Georgia did the only thing careful navigation would indicate, namely, reversed her engines, but the bow of the Georgia collided with the starboard side of the car float about 50 feet from her stern, damaging both the car float and the Georgia.

The decree below resulted in holding both vessels at fault for this collision. The Athens alone appeals, but, since it is a new trial permitting us to examine into the merits of the conflicting claims, we do so, in view of the state of the evidence.

[1] The Athens was navigating in violation of the East River statute on the wrong side of the river, and it is now well settled that such navigation is a fault that custom or even convenience will not excuse. The Black Diamond (C. C. A.) 273 F. 811; The N. Y. Central No. 17 (C. C. A.) 256 F. 220. The purpose of the East River statute was to keep the waters near the shore clear for vessels entering and leaving their piers as it was apparent the Pennsylvania Railroad No. 6 was doing. The appearance of the Athens navigating on the wrong side of the river embarrassed vessels lawfully there and brought about this collision. In addition, in entering into what was then a congested area, it is quite clear that the Athens could have crossed the river at Pigeon street, the point of departure, India street or North Thirteenth street, Bushwick inlet. Her captain testified that he had no intention of leaving the Brooklyn shore at Pigeon street; he says he could not cross at India street or North Thirteenth street because of the congestion of the river. However, he might have waited at any one of these places or immediately near there until the congestion cleared up. Furthermore, from the description of the tows and vessels in the river at the time, it appears that it was not as congested as he contends. He could have navigated near the center of the river instead of in close proximity to the Brooklyn pier heads. It is apparent that he navigated on the Brooklyn side to keep out of the strong flood tide, and continued so doing as a convenience.

[2] The Athens was on a course crossing that of the Georgia. That the Athens stopped is beyond question. If a lighter coming from Brooklyn crossed the Athens' bow, as claimed, she should not have given a two-whistle signal indicating to the Georgia the right to navigate starboard to starboard and then stop. The Edna v. Crew (D. C.) 182 F. 890, affirm-ed (C. C. A.) 202 F. 1021. We think this lighter proceeded ahead of the Athens for about a quarter of a mile. Her position was known to the navigator of the Athens, and he approached from behind and in close proximity, and, if obliged to stop as claimed, there was no excuse for the two-whistle signal immediately before that. As the overtaking vessel, she was at fault if she approached so close to the vessel that a sudden change of course of the latter would bring the resulting collision. The Merrill C. Hart (C. C. A.) 188 F. 49.

[3, 4] It is apparent, however, that the Athens came from behind the Pennsylvania Railroad tow, angling toward Brooklyn and showing her green light. But for her stopping, the collision would have been avoided. When the captain saw the No. 6 and the Georgia, he was then called upon to stop and wait, not only because he was entering a congested area where he was in violation of the rule, but also because he was proceeding against the tide and he could and should have held back, giving the Georgia, proceeding with the tide, an opportunity to pass clear. The Galatea, 92 U. S. 439, 23 L. Ed. 727. At the time, the Georgia could not safely lose her steerageway, for that would have been fatal to her navigation, and it would have rendered it more difficult for the Athens continuing ahead. The collision happened solely through the fault of the Athens, and the Georgia should have been exonerated.

Decree modified accordingly, with costs.