## THE INDUSTRY.*

### NEW YORK & NEW JERSEY STEAMBOAT CO. v. SCHOMBURG.

Circuit Court of Appeals, Second Circuit.
November 12, 1928.

No. 21.

*Certiorari denied 49 S. Ct. 251, 73 L. Ed. ——.

Haight, Smith, Griffin & Deming, of New York City (Henry M. Hewitt and James McKown, Jr., both of New York City, of counsel), for the Industry.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and C. B. Manley O'Kelley, both of New York City, of counsel), for the Viking.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). The fault of the Industry is so plain and so gross that the only question can be as to whether the Viking, the vessel ahead, was not also at fault for her

change of course. Article 24 (33 USCA § 209) puts the burden upon the overtaking vessel to keep out of the way till she is "past and clear," and article 21 (33 USCA § 206) in general provides that, whenever one vessel must keep out of the way, the other shall keep her course and speed. Therefore, taken without recourse to the other rules, it might be inferred that, whenever one vessel is in fact overtaking another, the vessel ahead must hold her course and speed. However, rule 8 of article 18 (33 USCA § 203) further modifies the relative duties when each vessel is a steamer. If she would pass, an overtaking steamer must signal, and before passing must get the consent of the steamer ahead. The rule concludes by saying that the steamer ahead shall in no case attempt to cross the bows of the overtaking steamer or to crowd upon her course. It is perhaps possible to read this language as referring to the period before the exchange of signals, as well as thereafter, but it seems to us un-, reasonable to do so. In the first place, so construed, it would add nothing to the general duty prescribed by article 21. Rather we think it intended to make clear that it is only after the exchange of signals that the duty of the vessel ahead begins at all.

This is besides the only reasonable construction. [ The vessel ahead is usually overtaken because she has less speed and cannot avoid it; the overtaking vessel may always slow down and keep astern. The rules provide for no signal by which the overtaken vessel may declare her purpose to change her course and speed, and, if she is bound to keep both, she is, as it were, frozen in her navigation from the moment that the risk of collision begins, merely because the overtaking vessel begins to overhaul her, something which it is not always easy to ascertain. Thus she may be compelled to abandon her intended destination, or to pass her berth, merely because the overtaking vessel insists upon passing. It is therefore fair to suppose that her consent is required, not alone because she may think the passing dangerous in any case, but also because she may need to change her course for her own purposes to which the interests of the overtaking vessel can hardly be considered equal. The latter should therefore be obliged to hold herself in check against unexpected changes of course, and be prepared to meet them, until by the consent of the vessel ahead she gets assurance that it is convenient for her to hold on.

It must be confessed, however, that the authorities are by no means uniform, and that they cannot be altogether reconciled. The Supreme Court, in Thompson v. The Great Republic, 23 Wall. 20, 23 L. Ed. 55, decided in accordance with the construction we have adopted, has never qualified its ruling. In that case a vessel ahead was held blameless, which starboarded across the bows of the overtaking vessel, coming up on her port quarter. The overtaking vessel was held at fault for not keeping enough distance to allow for such an unexpected change of course. We applied the same rule in The Merrill C. Hart (C. C. A.) 188 F. 49, The M. J. Rudolph (C. C. A.) 292 F. 740 and The Georgia (C. C. A.) 18 F.(2d) 743. On the other hand, we held the vessel ahead at fault in Long Island R. R. Co. v. Killien (C. C. A.) 67 F. 365, The N. Y. Central 28 (C. C. A.) 258 F. 553, and The Transfer No. 8 (C. C. A.) 25 F.(2d) 628. In The Pleiades (C. C. A.) 9 F.(2d) 804, we declined to hold the overtaking vessel at fault for being so close that she could not avoid a sudden change of course. The Sixth Circuit held the overtaking vessel at fault for approaching too close without signal, but also held a tug charged with the same duties as the vessel ahead for porting across her bows, Robinson v. Detroit, etc., Co. (C. C. A.) 73 F. 883, 892.

Some of these latter cases may possibly be explained on the facts as proper exceptions to the rule. Suppose that an overtaking vessel, in disregard of her duty, undertakes to pass without giving the necessary signal. Should she get so near that any change of course by the vessel ahead would make it impossible for her to avoid collision, it may be that the vessel ahead must forego her privilege. Courts are fond of saying that the rules are not to promote, but to avoid, collision, and the situation is analogous to that in crossing cases. In these the holding-on vessel is bound to keep her course and speed, a duty strictly enforced; and yet the time may come when it is apparent that the giving-way vessel can no longer "keep out of the way" unaided. At that moment the holding-on vessel's duty ceases, and she is free and usually bound to change her course or speed. Conversely, in an overtaking case, though the overtaking vessel has wrongfully placed herself where she can no longer alone avoid collision, if the vessel ahead changes her course or backs, we do not say that the latter's privilege remains. All we do say is that, while it remains possible for the overtaking vessel by proper navigation to accommodate herself to a

change in course or speed of the vessel ahead, that vessel is not held to any duty, but may execute her purposes, regardless of the overtaking vessel and in reliance upon her duty to keep out of the way. That is the situation at bar, for the Industry, by starboarding or backing, could, if alert, have avoided collision, as soon as the Viking began to port.

We do not regard The Illinois, 103 U. S. 298, 26 L. Ed. 562, or The Philadelphian, 61 F. 862 (C. C. A. 1), as opposed to anything we have said. Each was substantially alike, and presented the case of a steamer overhauling a schooner which was close-hauled. The steamer had planned to go under the schooner's stern, when the latter unexpectedly broke her tack and came about into the steamer's course. In such cases rule 8 of article 18 does not apply, and could not, because a sailing vessel has no way of assenting to the steamer's passing. The case is governed by articles 20, 21, and 24, and the sailing vessel is held to keep her course and speed, unless forced to go about, which was not the case in either of the decisions cited. The propriety of the rule is further apparent, because a steamer is almost always the faster craft and passes quickly; it is usually no hardship for the sailing vessel to be held to her course from the time the risk of collision arises. When, however, the case involves two steamers, which may come to an agreement and must do so, quite other considerations are appropriate.

Decree affirmed.