## THE WINCECO. THE J. G. REICHERT. THE MARY E. REILLY.

District Court, E. D. New York.

Feb. 24, 1930.

Keese & McMullen, of New York City (W. Ludlow James, of New York City, of counsel), for Cleary Bros. Inc.

Macklin, Brown, Lenahan & Speer, of New York City (J. Dudley Eggleston, of New York City, of counsel), for L. E. Huntley.

Single & Single, of New York City (Wm. J. Mahar, of New York City, of counsel), for Reichert Towing Line.

GALSTON, District Judge.

By stipulation these two cases were tried together.

The scow Mary E. Reilly, while in tow stern first on the starboard side of the steam tug J. C. Reichert, was in collision with the steam lighter Winceco. Both the scow and the Winceco were damaged, and the question involved is the cause of the collision.

As is not unusual in these harbor collisions the testimony shows a sharp conflict. By no possibility can the two versions of what took place be reconciled with each other.

A careful study of the witnesses and their testimony leads me to the conclusion that the probabilities, which in the circumstances must be used as a guide in determining the truth, as was said in The Black Diamond (C. C. A.) 273 F. 811, point to the testimony of Capt. Littlefield of the J. C. Reichert as affording the more convincing account of the occurrence.

With his tow he was bound from the Navy Yard in the East River to the Union Dry Dock at Weehawken on the North River. He was headed down about the middle of the river. The tide was ebb and the visibility a little hazy. As he came abreast of Pier 10 out on the river, a car float came

along on his port side, also bound down the river, and passed him. Just ahead was a tug, the Dauntless. The Dauntless was making in toward the New York shore. To enable the Dauntless to pass his bow, he slowed down and finally stopped. As he stopped, the car float pulled ahead of him, and as it did so he saw the Winceco off his port bow. It was so close that he signaled to reverse his engine, and blew one whistle. He got no reply. Seeing that the Winceco made no effort to change her course, he sounded the alarm signal and still kept backing, giving also a backing signal after sounding the alarm. When he first saw the Winceco, she was two or three lengths away; that is, about between 200 or 300 feet, and heading for Pier 8 or 10 on the Manhattan shore. As he continued backing, the Winceco made no change of course, and appeared not to slow down, continuing on her course until she came in contact with the port stern corner of the scow Mary E. Reilly. The point of contact of the Winceco was about a foot back of the stem on her starboard side.

The J. C. Reichert had the Winceco on her port side and accordingly was the privileged vessel. The one-whistle signal was therefore proper. In addition to having the right of way, the ebb tide was with the J. C. Reichert. This condition also entitled her to the privilege of continuing ahead.

On the other hand, if one were to give credence to Capt. Tuttle's version of the collision, it would be necessary to hold that he was hugging the pier ends of the Manhattan side and was thus violating the provisions of chapter 410, section 757, Laws of New York 1882, requiring that all steamboats "passing up and down the East River, between the Battery at the southern extremity of the city of New York and Blackwell's Island, shall be navigated as near as possible in the center of the river."

While it may be admitted that the rule was made primarily for the benefit of vessels going in and out of slips and not for the protection of boats navigating in the stream, nevertheless the violation of it has otherwise been condemned. As was said in The Athens (C. C. A.) 18 F.(2d) 743, 744: "The Athens was navigating in violation of the East River statute on the wrong side of the river, and it is now well settled that such navigation is a fault that custom or even convenience will not excuse. The Black Diamond (C. C. A.) 273 F. 811; The New York Central No. 17 (C. C. A.) 256 F. 220."

Both the J. C. Reichert and the Winceco contend that the other failed to maintain an efficient lookout. I find nothing in the testimony to indicate that there was any such fault on the part of the J. C. Reichert; whereas it would seem that, inasmuch as the pilot house on the Winceco was 60 feet aft of the stem of the vessel, and since there was no lookout other than the captain in the pilot house, there may well have been negligence on that score. However, I do not decide the matter on that ground. I believe the negligence consisted in the course that the Winceco took and in failing to give the J. C. Reichert the right of way.

The libel will be sustained as against the steam lighter Winceco, and dismissed as to the J. C. Reichert and Reichert Towing Line.