## THE BERMUDA.

### (*District Court, S. D. New York.* June 9, 1883.)

1. **COLLISION—FIFTH SITUATION—SECTION 4233—RULES 19, 22, 23.**
    Where the steam-tug E. B., having two large ballast logs in tow, lashed to her side, was proceeding from Jersey City to Brooklyn, and the steamer B. was following her astern and somewhat to the eastward, and their courses converged by an angle of about two points, the steam-tug being on the starboard bow of the B., and the latter ran over and sank the tug, the tug having kept her course, *held*, that the situation was either that of an overtaking vessel, or the fifth situation in the Inspector's Rules, and in either view by rules 19 and 22 of section 4233 of the Revised Statutes the steamer was bound to keep out of the way, and that the collision was wholly the fault of the latter.

2. **SAME—WANT OF LOOKOUT—FAULT.**
    Though the tug had no proper lookout, *held*, on the facts, that this fault in no way contributed to the collision, and therefore was insufficient to charge the tug with half the loss.

In Admiralty.

*W. R. Beebe* and *W. W. Goodrich*, for libelants.

*Butler, Stillman & Hubbard*, for claimants.

BROWN, J. This action was brought to recover damages to the steam-tug Edith Beard, which was sunk through a collision with the Bermuda, on the tenth of September, 1880, at a point between Ellis island and Castle William. The tug had left the Pavonia ferry with two large ballast logs in tow, lashed upon her port side, and described as 80-ton logs, bound for Merchants' Stores, Brooklyn. The Bermuda is a large steam-ship, which had left her wharf at 4 P. M., and was proceeding down the middle of the Hudson river out to sea, and was somewhat to the eastward and astern of the tug. The course of the tug was about two points further to the eastward than the course of the steam-ship. According to the evidence of the latter, when they were about two lengths apart two whistles were given, to which no answer was made by the tug. The wheel of the steamer was starboarded, but not in time to avoid the tug, which was struck upon her port quarter and sunk immediately.

The courses of the two vessels were converging by an angle of about two points; if the situation is to be considered as the fifth situation,

as the tug was upon the starboard side of the Bermuda, it was the duty of the latter, under rule 19, to keep out of the way; or, if considered simply as an overtaking vessel,—*The Franconia*, L. R. 2 Adm. 8; 35 Law T. (N. S.) 721,—the same duty was imposed on her by rule 22, while the duty of the tug, by rule 23, was to keep her course. The tug was seen from the Bermuda when half a mile distant, and there was nothing to prevent the latter from keeping out of the way by going on either side of the tug. By rule 11 of the supervising inspectors, p. 37, (fifth situation,) the Bermuda was required to sound one whistle, and pass to the right, or astern, of the tug. *The Grand Republic*, 16 FED. REP. 424. The tug, I am satisfied, did not change her course, nor embarrass the Bermuda in any way; and the Bermuda is, therefore, necessarily chargeable with fault in not having avoided the tug, as the burden of doing so lay upon her, and there was nothing in the way to prevent.

The tug was at the time in charge of her captain, who acted as pilot, and there was no other lookout either forward or aft. No whistles from the Bermuda were heard; nor were those on board aware even that the Bermuda was approaching until she was close upon them; and the captain, after seeing the Bermuda, had barely time to escape from the pilot-house, and went down with the vessel. There was plainly gross negligence on the tug in regard to keeping any proper lookout for other vessels; and upon this ground the tug must have been held jointly liable for the loss, were I not satisfied from the evidence that there was nothing which the tug ought to have done, or could properly have done, to avoid the collision had a lookout been properly kept and the motions of the Bermuda promptly reported. If the course of the Bermuda had been closely watched from the first, the tug would still have been bound to keep her course precisely as she did. She was bound to keep her course and not to change it, either to the right or to the left, whereby the measures which the Bermuda might take, and was bound to take, to avoid her might be thwarted. As the Bermuda was approaching the tug's port quarter at an angle of only about two points, it was impossible to tell, until the Bermuda was near at hand, whether the steamer would pass to the right or left. The first intimation was that given by her two whistles, assuming that they were given, as testified to by those on board the Bermuda; but these whistles were not given until about 10 seconds, it is estimated, before the collision, or at one or two lengths distance. Until this indication of the intention of the Bermuda as to which course she intended to take in passing the tug, the latter could not anticipate on which side she would go, and would have no right to change her course, lest that should embarrass the steam-ship in performing her duty to avoid her. When these whistles were given the only thing the tug could have done was to stop, or to port; and I am satisfied that the collision was then so imminent that neither stopping nor porting would have made any difference in

the result, and that it was then impossible for the tug, by any change of her own, to have escaped. The heavy logs lashed to her sides necessarily prevented any rapid maneuvering. Though the want of a proper lookout was reprehensible, I am satisfied that in this case it in no way contributed to the collision.

The tug was moving at about half the rate of the Bermuda. Had she been unembarrassed by anything lashed to her side, she undoubtedly could have been quickly handled, and might have got out of the way. It is probable that those on board the Bermuda did not see the heavy logs which embarrassed her motions until they had nearly reached her, and that they supposed she would, therefore, get out of the way at the last moment, by a rapid maneuver, which small tugs are easily able to make, and that there was no need of observing the strict rules of navigation. As the tug was, however, incumbered by the logs in tow, so as to be almost as unwieldy as the steamer herself, the latter must bear the consequences of her mistake, if that was the mistake, in assuming that the rules might be neglected with impunity.

Decree for libelants, with costs.