## THE PLEIADES.

### LUCKENBACH S. S. CO., Inc., v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 4, 1926.)

No. 160.

**1. Collision ⬤⟺18—Rule for determining proximate cause stated.**

Whether a negligent act is proximate cause of collision depends on whether there is unbroken connection between act and injury; an intervening act is not proximate cause, unless it is efficient to break causal connection.

**2. Collision ⬤⟺94—Overtaking vessel, navigating too close to vessel ahead, held not liable for collision, where current caused overtaken vessel to sheer.**

Overtaking vessel, negligent in navigating too close to vessel ahead in narrow channel without attempting to pass, held not liable for collision when current suddenly caused overtaken vessel to sheer, proximately causing collision.

**3. Collision ⬤⟺94—Overtaking vessel is not bound to anticipate improper navigation by overtaken vessel.**

Overtaking vessel is not bound to anticipate improper navigation by overtaken vessel.

**4. Collision ⬤⟺94—Overtaking vessel, not intending to pass overtaken vessel, is not required to signal.**

Overtaking vessel, not intending to pass overtaken vessel, is not required to give signal required by Inland Rules, art. 18, rule 8 (Comp. St. § 7892).

**5. Collision ⬤⟺94—Mere presence of overtaking vessel near scene of accident held insufficient to charge her with fault.**

Mere presence of overtaking vessel in close proximity to scene of accident held insufficient to charge her with fault.

**6. Collision ⬤⟺18—Negligence not contributing to collision as proximate cause does not render ship liable.**

Negligence not contributing to collision as proximate cause does not render ship liable for collision.

**7. Collision ⬤⟺94—Overtaken vessel, caused suddenly to sheer by current in narrow channel and colliding with overtaking vessel, held not at fault.**

Overtaken vessel, caused suddenly to sheer by current in narrow channel and colliding with overtaking vessel, held not at fault, where everything was done to avoid collision by persons in charge of overtaken vessel, except to drop anchor; leading vessel having right to change her course.

**8. Collision ⬤⟺94—Overtaking vessel must bear consequences of her own injury from navigating too close to overtaken vessel.**

Overtaking vessel must bear consequences of her own injury from navigating too close to overtaken vessel in narrow channel, resulting in collision when overtaken vessel suddenly sheered because of current.

Appeal from the District Court of the United States for the Southern District of New York.

Cross-libels by the United States against the steamship Pleiades, her engines, etc., the Luckenbach Steamship Company, Inc., claimant, and by said claimant against the United States for damages resulting from collision of the Pleiades with the steamship Lake De-

lancey. From a decree of the District Court (5 F.[2d] 834), holding the Lake Delancey wholly at fault, the United States appeals. Reversed, with directions to dismiss both libels.

Emory R. Buckner, U. S. Atty., of New York City (Horace M. Gray, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Carter & Phillips, of New York City (Peter S. Carter and Robert Phillips, both of New York City, of counsel), for claimant of the Pleiades.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The Lake Delancey was operated by the United States of America and the Pleiades by the Luckenbach Steamship Company, Inc., on May 21, 1920, when, with the day calm and clear, the vessels collided at the Horseshoe Bend in the Delaware river. The Lake Delancey backed out of her coaling berth at Greenwich coal piers, just below Philadelphia, at about 12:55 p. m., with the assistance of a tug, and straightened out into the river and proceeded on her voyage to Bangor, Me., at about 10 knots an hour. She was 251 feet long, 43 feet beam, and drew 20 feet upward and 22 feet 6 inches aft. Her master and a licensed Delaware river pilot were on the bridge. Her chief officer was stationed at the forecastle head, the second officer was at the wheel, and the third officer was on the poop deck. As the Lake Delancey left her pier, the Pleiades, 331 feet long, 47 feet beam, loaded with coal and general cargo, passed down the river on a voyage to Rotterdam. She had been under way about an hour and was making about 7½ knots. She was on an even keel drawing about 26½ feet. When the Lake Delancey started down the river, the Pleiades was about 500 feet to half a mile away. The Lake Delancey, going at full speed, gained upon the Pleiades and reduced her speed to half and followed until at Ft. Miffin Range, below the Horseshoe bank. She did not attempt to pass, and no passing signals were blown. The Lake Delancey drew off on the port quarter of the Pleiades, and laid her course near the middle of the dredged channel about 400 feet to the eastward of that of the Pleiades, following the latter at a distance of two or three lengths. In this position, the vessels approached the Horseshoe Bend. The dredged channel is about 1,000 feet wide and 33 feet deep. It makes a wide sweep to the right, going down

stream, and changes direction 10 points. The river is about a mile wide; the channel is marked by buoys. It is cut about midstream, and is navigated on ranges. The banks of the channel are mud. about 15 feet below the surface at mean low water. Responsibility for this collision rests upon the action of the navigators of the vessels at this point.

After passing the first black buoy at the upstream end of the bend, the pilot of the Pleiades ordered the helm to port. This order was obeyed, but the vessel refused to answer her helm. Observing that her head was not falling off, the pilot ordered hard aport, and the wheel was rolled over as far as it could go. Thereupon the Pleiades suddenly took a sharp sheer to port. The pilot rang his engines astern and blew a danger whistle. The Pleiades swung athwart the channel, with her engines full astern, and about at right angles across the channel headed for the Jersey shore, and directly toward the path of the Lake Delancey. The witnesses for the Pleiades say that all was well until the first order was given. The chief officer of the Pleiades went to the bridge from his post at the forecastle head, and it is claimed that, if he had remained at his post, he might have let the anchors go and have checked the sheer. Just as he reached the bridge, the pilot gave the order to port; then came the hard aport order, and he noticed the ship started to sheer, but, when she had headed off more than a point, he left the bridge and ran to the poop, to see if the rudder was functioning. No order was given to reverse the engine when he left the bridge, and the danger signal was blown. after the engines were rung astern. When he looked over the stern, he found the rudder hard over to starboard, and signaled to the master and pilot on the wing of the bridge that the steering gear was all right. The Lake Delancey struck the overhanging of the port side of the Pleiades' stern a glancing blow with her stem, breaking plates and sheering off rivets. The anchors were let go immediately, and the Pleiades ran on the east bank. The collision occurred about midstream.

The evidence from the Lake Delancey indicates that, before the Pleiades started to turn, the Lake Delancey's engines had been put in slow. The pilot observed the difficulty the Pleiades was having, and reversed his ship before the Pleiades blew her danger signal. He blew three blasts of his whistle. The helm was ported slightly, and, with the engines going full speed astern, the bow of the Lake Delancey fell to the starboard. As

the Lake Delancey drew closer to the Pleiades, which was then crossing her path, her pilot says he saw that a collision might be avoided, and shouted to the Pleiades to go ahead on her engines. They said they did so, but the engine room log does not record it. The way of the Lake Delancey had been reduced, and her heading changed to starboard. The Pleiades floated, with the assistance of tugs, at about 4:05 that afternoon.

At the time of the collision, the tide was running flood at the rate of about a knot an hour. This somewhat affected the navigation of the Pleiades, and below the Pleiades was excused from fault. When the sheer started, undoubtedly the full effect of the tide on her port side was felt, which accelerated her swing to port and retarded her range down stream. This helped to shorten the distance between the vessels. The witnesses for the Pleiades testified that there would have been no collision, if the vessel had answered her helm. The occurrence of a sudden sheer was not to be anticipated by the Lake Delancey. When the Pleiades lost control of her movement, the close proximity of the Lake Delancey made the collision possible. If the Lake Delancey had not been navigating so close to the Pleiades, the collision might have been avoided.

[1, 2] To ascertain the proximate cause of the collision, we must inquire whether there is an unbroken connection between the act and the injury; that is, did a negligent act cause the injury? An intervening act is not the proximate cause of injury, unless it is efficient to break the causal connection. Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Muller v. Globe & Rutgers Fire Ins. Co., 246 F. 759, 159 C. C. A. 61. Assuming that the Lake Delancey was navigating too near the Pleiades—which is the chief fault charged against her—there is no evidence that she intended to pass. She gave no signals of such intention. Still the collision would not have occurred, but for the difficulty which the Pleiades was having in her navigation, because of the sudden and unexpected sheer she took. The collision would have been avoided, but for that sheer. The Portia, 64 F. 811, 12 C. C. A. 427. If it were negligent for the Lake Delancey to follow so closely, that is an antecedent act of negligence, because it would not have resulted in collision, had the Pleiades not taken the sheer. The sheer sufficiently accounts for the collision. The M. J. Rudolph (C. C. A.) 292 F. 740.

[3-6] The law does not impose upon an overtaking vessel the obligation of anticipating improper navigation on the part of the other vessel. Long Island R. R. Co. v. Killien, 67 F. 365, 14 C. C. A. 418. There is no evidence to warrant the conclusion that the Lake Delancey intended to pass, and it was therefore not required to signal, as required by rule 8 of article 18 of the Inland Rules (Comp. St. § 7892). And the mere presence of the Lake Delancey in close proximity at the scene of the accident is not enough to charge her with fault. The Benjamin Franklin, 145 F. 13. Acts of negligence which do not contribute to the accident as a proximate cause do not render the ship liable. The Curtin, 217 F. 245, 133 C. C. A. 519; The Shawmut (D. C.) 261 F. 616.

The chart indicates that a vessel bound down the river against a flood tide at the Horseshoe Bend will first receive the tide on her starboard bow and port quarter. The tidal current on the starting of steamships is referred to in Knight's Modern Steamships (7th Ed.) p. 427, where he says: "A long steamer is shown attempting to round a turn against the current. As her bow reached out beyond the point, it is caught by the current on the wrong side and swept off the wrong way, giving her a rank sheer across. A moment later her stern feels the backwater sweeping out from the far side of the bend, and tending to cut her stern around the wrong way. Thus there are two forces at work, one on the bow and the other on the stern, to keep her from making the turn."

[7] This appears to have been the action of the current around the bend, and is an explanation of the sheer of the Pleiades. The helm of the Pleiades was put hard aport and her steering gear functioned. There is no doubt that the Pleiades, because of the condition, did lose control temporarily. This is conceded. Everything was done on board her that could have been done by competent navigators and efficient equipment to help her keep her course. The sheer that she took seems to have been beyond the control of those in charge. She did not respond to the navigation expected. No fault can therefore be charged against the Pleiades, nor could fault be charged for failure to drop the anchor. Nothing indicates that this would have been effective had she done so. The Pleiades, as the leading vessel, had the right to change her course. The Great Republic, 23 Wall. 20, 23 L. Ed. 55.

[8] The overtaking vessel must bear the consequences of her own injury, if she made the

mistake in assuming a position too close to the Pleiades. The Bermuda (D. C.) 17 F. 397. But no evidence in the record, or inference fairly to be adduced therefrom, justifies the conclusion that the Pleiades was at fault. The learned District Judge should have dismissed the libel filed by each libelant.

Decree reversed, with directions to dismiss both libels.