**OCEAN S. S. CO., Limited, v. UNITED STATES.**

**THE ARTEMIS.**

**UNITED STATES v. OCEAN S. S. CO.**

**THE ALCINOUS.**

**Nos. 210, 211.**

Circuit Court of Appeals, Second Circuit.

March 3, 1930.

Charles H. Tuttle, U. S. Atty., and Charles E. Wythe, Sp. Asst. to U. S. Atty., both of New York City.

Haight, Smith, Griffin & Deming and John W. Griffin, all of New York City, for Ocean Steamship Co., Limited.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The appellee filed this libel under a special act of Congress to recover damages sustained by its steamship the Alcinous. The Artemis is a government owned vessel, and it collided with the Alcinous in Ambrose Channel at 9 a. m. on December 3, 1917. A cross-libel was filed by the appellant and below the Artemis was held solely at fault.

Both vessels were in a convoy of ships bound for the other side. Their positions were assigned by British authority. The Artemis is a twin screw vessel more than 500 feet long, drawing about 29 feet of water, and the Alcinous is a single screw vessel about 458 feet long, drawing about 24 feet of water. The latter was proceeding astern and to the starboard of the Artemis. Sandy Hook pilots were navigating both vessels. At the place of collision, near buoy 3–A about 2½ miles on the straight reach, the channel is about 2,000 feet wide and runs straight for about 4 miles. The Artemis proceeded to

starboard of midchannel under slow and half speeds. The Alcinous was about half a mile astern, and 300 or 400 feet to the starboard of the Artemis, making 9 knots, while the speed of the Artemis was 7 knots. The navigators of the Alcinous observed a slight movement to starboard by the Artemis. It was not regarded as an indication of danger but rather an irregularity of course. The Artemis immediately straightened her course and proceeded. The Alcinous then blew one whistle, asking permission to pass under Rule 8 of article 18 of the Inland Rules, which requires that such a signal be answered by the leading vessel, either an assenting whistle, or, if unwilling for the passage because it is unsafe, an alarm signal. The Artemis did not answer. When the Alcinous blew, she stopped her engines because, as her navigator said, he did not intend to pass unless he received permission to do so. The Alcinous then swung by porting a little to starboard, nearer to the edge of the channel to compensate for the slight sheer of the Artemis, and then starboarded to straighten down again, and finally steadied. When the slight sheer occurred, and the first whistle was blown, the Alcinous was about 1,000 feet astern of the Artemis. The engines of the Alcinous remained stopped about three minutes, and, while so stopped, and 500 feet astern and 400 feet to the starboard, the Artemis sheered a second time. The Alcinous blew a second signal of one whistle, about two minutes after the first whistle, but no answer was received. There was no danger in the situation at that time. Soon after the Artemis was out of control and blew a danger signal. The Alcinous immediately reversed her engines at full speed. Simultaneously the Artemis swung violently to starboard, changing her heading 5 or 6 points from the channel across, about 117° to about south. As the sheer developed, it became very violent. The Artemis seemed to go at the rate of 4 or 5 knots as she sheered. The master of the Artemis called it a "sudden sheer," and said that the "rudder probably caught aport" and made the sheer much worse and she also was caught by the flood tide on the port side which added to the danger. The Artemis came to a position almost athwartship across the channel and nearly blocked the channel. She ran her bow out of the channel just beyond buoy 3–a. She grounded as soon as her stem left the channel. The Alcinous was running about 100 feet inside the buoys and swung 3 points to port before the vessels struck, establishing that a considerable part of the Artemis remained in the channel when she grounded. While the Alcinous went full speed astern for about a minute, she was unable to overcome her headway and avoid collision. There was nothing to indicate to the Alcinous but that the Artemis would break her sheer and straighten up, in which event a starboard helm of the Alcinous would have been fatal, and the proper navigation then was to go full speed astern. But when it became plain that the Artemis could not break the sheer, the master of the Alcinous, with knowledge that his vessel had a balanced rudder and could be swung over quickly, put his engines ahead and his helm hard astarboard. This navigation was regarded as the best under the circumstances by the witnesses. See, also, Knight on Seamanship (7th Ed.) pp. 304–323. The Alcinous swung sharply 3 points to port, but the bow of the Artemis was in the sand, and the Alcinous was unable to avoid her. The Alcinous engine was again reversed just before the collision. To port with engines reversed would have been of no avail. Knight on Seamanship, pp. 313, 316. The Alcinous, by her care in navigation, under the circumstances, lessened the blow and the resulting damages.

■ The cause of this violent sheer was due to the closing of a steam exhaust valve of the steering engine which, when closed, prevented the functioning of the gear. The Artemis was at fault for having negligently closed the steam valve, which made the vessel take this extraordinary sheer in going down the channel and grounded her. Moreover, she was also at fault in failing to answer the signal request for passage of the Alcinous. These faults brought about the collision.

The charge against the Alcinous seems to be that she was an overtaking vessel and was bound to keep out of the way of the vessel ahead. She was said to have approached too close to the stern of the Artemis and could not avoid the collision when the Artemis sheered. The Alcinous was not expecting such a violent and extraordinary sheer due to the unmanageable ship's steering gear.

If the Artemis had blown an assenting whistle and had kept her course, the Alcinous could have passed in safety with three or four hundred feet to spare. Indeed, if the Artemis had not grounded across the channel, the collision would have been avoided.

■■ After the sheer took place and sudden danger threatened, those in charge of the navigation of the Alcinous did everything

possible to avoid collision. Having been brought into this perilous position by the navigation of the Artemis, it is wrong to attempt to criticize the Alcinous. The Ludvig Holberg, 157 U. S. 60, 15 S. Ct. 477, 39 L. Ed. 620; The Mary T. Tracy (D. C.) 298 F. 528. The Alcinous had requested consent to pass without its having been granted, and she was not engaged in a maneuver of passing when the collision occurred. In coming up astern of the Artemis, she was obliged to so shape her course as to guard against such maneuvers of the vessel ahead as might be reasonably expected. She was not obliged to contemplate or expect an extraordinary sheer. The duty of careful navigation by the Alcinous did not excuse the unusual and violent sheer by the Artemis, resulting in grounding that vessel. No duty required expectation of such improper navigation on the part of the leading vessel. The Illinois, 103 U. S. 298, 26 L. Ed. 562; The Pleiades (C. C. A.) 9 F.(2d) 804; Long Island R. R. Co. v. Killien (C. C. A.) 67 F. 365. Where the presence of the following vessel is known, navigation justifying a leading vessel in changing her course without warning refers to normal and foreseeable changes of course. The M. J. Rudolph (C. C. A.) 292 F. 740. The proximate cause of this collision was the sheer, and there is but one such cause. The Panther (C. C. A.) 5 F.(2d) 64.

We are satisfied that the Alcinous was free from contributing faults.

Decree affirmed, with costs.