## THE MORMACMOON.

### No. 941.

District Court, D. Massachusetts.

June 14, 1944.

Thomas H. Walsh, of Boston, Mass., for libellant.

Charles S. Bolster (of Bingham, Dana & Gould), of Boston, Mass., and Hagen & Eidenbach, of New York City, for claimant.

SWEENEY, District Judge.

This is a libel in admiralty growing out of a collision on July 7, 1941, between the scow No. 19 which was in tow of the tug Melrose, both owned by the libellant, and the steamship Mormacmoon.

### Findings of Fact

On the date in question the libellant was operating the dredge Delver in a section of Reserve Channel which lies to the south of the Army Base Pier in Boston Harbor. Attending the dredge and assisting in its dumping operations were the tug Melrose and two dump scows, Nos. 19 and 20. The dredge was fixed about 1,000 feet easterly of the end of the Army Base Pier and slightly south of the center of Reserve Channel extended. She was held in place by five anchors: one lying right astern of the dredge coming in at deck level; two quarter anchors, one starboard and one port, the wires paying out at the stern from a gallows brace about 18 feet above deck, the anchors being placed about 750 feet ahead of the dredge; and two bow anchors paying out straight from the starboard and port to the north and south of the dredge. These anchors were located about 650 feet away from the dredge. The lines running to the anchors were so fixed that, should the occasion arise, the wires might be slackened so as to sink to the bottom and permit passage of a boat over the surface of the waters unimpeded by the anchor wires.

The Channel adjacent to the Pier is about 200 yards wide. In front of the Pier the Channel widens to the northward indefinitely.

The Mormacmoon, which was about 460 feet long, and under control of a licensed harbor pilot, left Berth No. 6 at the Army Base Pier, turned in the Channel with the aid of two tow boats, and proceeded out of the Channel slowly, blowing a slip signal of one long blast. It was the intention of the Mormacmoon to proceed out of Reserve Channel and then turn to the right to enter the main ship channel and proceed out of the Harbor. She set her course in such a manner as to take her just barely clear of the dredging unit. This was the shorter and more direct course.

Prior to the collision the tug Melrose had returned from a dumping operation with the scows Nos. 20 and 19 made up to its port side. Scow No. 20 was in the lead and scow No. 19 was just astern of No. 20 held to it by two cables. The Melrose proceeded from the main ship channel of Boston Harbor and turned into Reserve Channel and proceeded directly to the dredge Delver. Scow No. 20 was placed alongside the dredge under the anchor wires and was made fast with two lines. She was in this position about three or four minutes when the Mormacmoon approaching and at a distance of about 700 feet blew four short blasts to let the dredge know of its intention to pass and waited for the dredge to slacken its anchor lines. When this was accomplished the Mormacmoon started ahead. In the meantime, the

incoming tide and southwest wind had caused scow No. 19 to swing out to the north to a slight degree. The time during which the Melrose and No. 20 had been tied up to the dredge before the collision was but two or three minutes and was not sufficient time for No. 19 to swing squarely in the path of the Mormacmoon. By this I mean it had not swung to a position that would be at right angles to its former course. As the Mormacmoon proceeded after the wire cables had been slackened it became obvious that it was going to strike scow No. 19. It immediately put its engines into reverse which caused its bow to swing to the starboard. The point of contact between the bow of the Mormacmoon and the side of the scow was thus brought more nearly to the forward end of the scow. The Mormacmoon crashed into the side of the scow and so damaged it that it was necessary to beach the scow.

From the foregoing I conclude that both the Mormacmoon and scow No. 19 were at fault. When the Mormacmoon first laid the course that would take it out of Reserve Channel and into the main ship channel and with plenty of space to the north of the dredge unit it chose to go by the dredge unit so close that it caused the collision that occurred. It was fully informed as to the tide and the wind and seeing the scows and the tug Melrose tied up to the Delver should have anticipated that the rear scow would swing in the face of the wind and tide. It was negligence to fail to make an allowance for this swing.

On the other side of the picture, it was the duty of the Melrose to control her scows. See The Wrestler, 2 Cir., 232 F. 448; The Aurora, 2 Cir., 258 F. 439, and cases cited therein.

I think it clear that the negligence of the Melrose or the dredge in not controlling No. 19 contributed to the collision. If it could be argued that since the Melrose was stopped that absolute control of No. 19 could not be had except as it would be subject to the tide and wind and that the failure to do more than she did would not make the Melrose guilty of negligence, then the answer to that argument is simply this:— that when it became apparent that No. 19 would swing or was swinging into the path of the Mormacmoon, no warning signal was given by the libellant to the Mormacmoon.

Conclusion of Law

From the foregoing I find and rule that the collision referred to herein was due to the fault of both the libellant and the libellee. I conclude and rule that the damages are to be divided.