**WILLIAMS–McWILLIAMS INDUS-TRIES, INC.**

v.

**F & S BOAT CORPORATION**, Sabine Towing & Transportation Company, Inc. and M/V CAPT. BLACK, M/V VULCAN, their engines, tackle, apparel, furniture, etc.

No. 8018.

United States District Court
E. D. Louisiana,
New Orleans Division.

July 16, 1968.

William L. Von Hoene, New Orleans, La., for F & S Boat Corp.

Theodore G. Dimitry, New Orleans, La., for Sabine Towing & Transportation Co., Inc.

MITCHELL, District Judge.

This action by Williams-McWilliams Industries, Inc., as owner of Derrick Barge W–701 was brought, *in rem*, against the M/V Captain Black and the M/V Vulcan and, *in personam*, against the vessels' respective owners, F & S Boat Corporation and Sabine Towing & Transportation Company, Inc., seeking to recover damages sustained by Barge W–701 resulting from a collision occurring on March 1, 1965.

Approximately one week before the scheduled trial of this matter, F & S Boat Corporation settled its differences with Williams-McWilliams Industries, Inc. and the latter executed an Act of Subrogation in favor of F & S Boat Corporation, which then substituted its counsel as attorney of record for Williams-McWilliams Industries, Inc. and continued prosecution of the original claim against Sabine Towing and Transportation Company, Inc. as libelant. Sabine then filed a cross-claim against F & S Boat Corporation.

This matter was tried to the Court without a jury on April 29, 1968.

The Court, having heard the testimony of the witnesses and having considered the evidence and briefs submitted by counsel, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

**1.**

At all times material herein, Williams-McWilliams Industries, Inc. was a corporation organized under the laws of the State of Delaware and operating within the jurisdiction of this Court. It was the owner of Derrick Barge W–701, a documented vessel of the United States of 1139 gross tons, measuring 180 feet in length, 60 feet in breadth and 11.5 feet in depth.

**2.**

At all times material herein, respondent, F & S Boat Corporation was a corporation organized under the laws of the State of Louisiana, with offices in Berwick, Louisiana, and operating within the jurisdiction of this Court. It was the owner and operator of the M/V Captain Black, a model bow tug developing approximately 800–1000 horsepower.

**3.**

At all times material herein, Sabine Towing and Transportation Company, Inc. was a corporation organized under the laws of the State of Delaware, with its principal offices in Port Arthur, Texas, and operating within the jurisdiction of this Court. It was the owner and operator of the M/V Vulcan, a model bow tug developing approximately 1000 horsepower.

**4.**

The M/V Captain Black was proceeding up the lower reaches of the Atchafalaya River from the Gulf of Mexico, heading toward the Avoca Island Cutoff. She was towing the unmanned Derrick Barge W–701 on her starboard side. Her

stern extended about 5 to 10 feet aft of the after port corner of the barge. The barge had a freeboard of from 7 to 8 feet and a large steel derrick was mounted on its stern with a 3-story house athwart its bow used as living quarters for workmen.

5.

The M/V Vulcan was enroute from Port Arthur, Texas to Pascagoula, Mississippi. She was pushing three loaded oil barges tandem fashion with the Barge KYSO-28 in the lead. The total length of her tow was 590 feet and the two stern barges had a freeboard of about one foot. The KYSO-28 had a one foot freeboard aft, with a raked bow rising to a maximum freeboard of three feet at the headlog (which was about 1½ to 2 feet deep).

6.

Shortly after midnight on March 1, 1965, the M/V Captain Black turned eastward into the Avoca Island Cutoff, traveling in a northerly direction. She was followed by an unidentified tow, which in turn, was followed by the M/V Vulcan and its tow.

7.

The Avoca Island Cutoff Canal had a 2 to 3 knot downbound current and a surface width of about 200 feet with a dredged channel of approximately 125 feet wide. The wind was out of the southeast at 25 to 35 miles-per-hour, and night time visibility was good.

8.

About one mile from the Atchafalaya River, the Avoca Island Cutoff Canal makes a sharp left turn and then straightens out in a northeasterly direction. At about 2:00 A.M., as the tows of the Captain Black, the unidentified vessel and the Vulcan rounded the left turn in the canal, the unidentified vessel contacted the Captain Black by radio and an agreement was reached whereby she would overtake and pass the Captain Black on the latter's port side.

9.

The Captain Black slowed its speed and moved toward its starboard side of the channel to permit the overtaking tow to pass. While the unidentified vessel was overtaking the Captain Black, the Vulcan's pilot contacted the Captain Black by radiophone and a further agreement was reached whereby the Vulcan was to follow the unidentified vessel, overtake and pass the Captain Black on her port side. The Vulcan blew a two blast overtaking signal whereupon the Captain Black answered with a two whistle signal indicating her agreement to the proposed passing. The Vulcan moved over to the port side of the channel, increased its speed and began to effect the overtaking of the Captain Black.

10.

As the unidentified vessel overtook and passed the Captain Black, the latter vessel grounded the starboard bow of its towed Barge W–701 on the right edge of the dredged channel. The momentum of the tow, the thrust of the Captain Black positioned diagonally across the wide barge from the point of grounding, and the strong southeast wind on the starboard beam of the tow, combined forces and caused the Captain Black to "top around" or almost completely reverse directions in a clockwise movement in the canal so that the W–701 was then heading slightly toward the southeast bank of the canal and the Captain Black was positioned on the opposite side of the barge from the approaching Vulcan.

11.

Upon observing the Captain Black in distress, the Vulcan promptly reversed its own engines, sounded a four blast danger signal, and directed its course toward its port side of the channel. The Vulcan eventually came to a complete stop with the port sides of its laden barges hard against the left bank of the channel and the bow of its tow approximately 1000 feet downstream of the Captain Black and the W–701. The Vulcan's engines were then placed in neutral to avoid having a further reverse thrust cause the

port stern corner of the last barge to dig into the port side of the channel and pivot the starboard bow of the tow outward into the channel.

**12.**

After topping around, the W–701 (still fastened to the Captain Black) slid off the starboard bank of the channel and began drifting downstream, with the current, toward the Vulcan and her tow. The master of the Captain Black operated his engines and rudder in an apparent effort to overcome the southeast wind and ground his tow, however, the combined effect was to thrust the stern of the W–701 to starboard and toward the Vulcan and her tow.

**13.**

The Vulcan sounded a second four blast danger signal as the Captain Black drifted down on her tow, however, the Captain Black never initiated or returned any danger signals nor did she sound any whistle signals whatsoever other than those following its radio agreement to the overtaking proposed by the Vulcan.

**14.**

The starboard side of the W–701 collided with the starboard bow knuckle of the lead barge in tow of the Vulcan at about 2:30 A.M. on March 1, 1965. The actual collision involved very little force and only momentary contact. Following the collision, a deckhand on the Vulcan walked onto the barges and found only a slight disturbance of the paint on the knuckle of the Vulcan's lead barge.

**15.**

Because of the pilot's relatively low height of eye-level (20 feet above water level), the 7 to 8 foot freeboard and 180 by 60 foot dimensions of the Barge W–701, and because of the presence of the steel derrick alongside and the three-story quarters structure on the bow of

1. 28 U.S.C. § 1332.

2. Inland Rules, Art. 24 (33 U.S.C. § 209); California Transport Corp. v. The Accentor, 183 F.Supp. 817 (ED La.–1960), aff'd 289 F.2d 322 (CA 5–1961).

the W–701 (which was on a line between the position of the Captain Black and the Vulcan), the Court finds as a fact that the pilot of the Captain Black could see neither the Vulcan, the Vulcan's tow nor the point of collision between the W–701 and the tow of the Vulcan, but could only see the glow of lights from the Vulcan at the time of impact.

**16.**

The Court finds that the sheer of the Captain Black across the course of the M/V Vulcan was not attributable to any fault or negligence on the part of the Vulcan or those in charge of her.

**17.**

The Court finds as a fact that the sole cause of the collision was the negligence of the Captain Black in allowing its tow to ground and top around in the path of the overtaking Vulcan while in a narrow channel; in permitting or causing its tow to drift sideways 1000 feet into collision with the stationary tow of the Vulcan whose presence was known; and in failing to maintain proper control over her tow.

## CONCLUSIONS OF LAW

**1.**

The Court has jurisdiction of this action and venue is properly laid in the Eastern District of Louisiana, New Orleans Division.[1]

**2.**

██ The M/V Vulcan, as the overtaking vessel had the duty to keep out of the way of the overtaken vessel.[2] However, once the Captain Black assented to the passing, she had the duty to keep her course and speed so as to enable the burdened Vulcan to navigate with assurance as to the action of the privileged vessel.[3]

3. Inland Rules, Art. 21 (33 U.S.C. § 206); Eustathiou & Co. v. United States, 178 F.Supp. 33 (DC Va.–1959).

### 3.

■ Although the Vulcan, as the overtaking vessel, assumed those risks inherent in passing, and was obliged to guard against foreseeable and normal maneuvers of the Captain Black as might reasonably be expected, she did not assume the risk of a vessel grounding and drifting across the canal into her path nor was she obliged to contemplate or expect improper maneuvering or navigation on the part of the leading vessel.[4]

### 4.

■ The Court concludes that the Captain Black by allowing its tow to ground and top around in the path of an overtaking vessel in a narrow channel and for permitting or causing its tow to drift sideways 1000 feet into collision with the overtaking Vulcan is guilty of a statutory violation of Article 18, Rule VIII (33 U.S.C. § 203) and Article 21 (33 U.S.C. § 206) of the Inland Rules.[5]

### 5.

■■ A vessel guilty of a statutory fault is presumed to have contributed to the accident. The libelant has failed to sustain its burden of proof by the requisite weight of the evidence that a statutory violation by the Captain Black not only did not but could not have contributed to the collision.[6]

### 6.

■■ The M/V Vulcan was not in any way at fault in the occurrence of the collision. After the Captain Black began topping around and sudden danger threatened, those in charge of the navigation of the Vulcan did everything possible to avoid the collision. It was the duty of the Captain Black to control her tow so that it would not drift into the path of the Vulcan and she was obliged to take all reasonable steps to avert the foreseeable danger of collision.[7]

### 7.

■ The Court concludes that this collision resulted through the sole fault of the Captain Black. The evidence established that the Captain Black got into a situation in the channel where accurate navigation was necessary and that she lost control of herself and her tow. The Vulcan kept a distance of 1000 feet from the Captain Black, which should have been ample. Allegations of fault against the Vulcan are without merit and even if some fault could be found in the navigation of the Vulcan, such fault would be minor as compared to the gross fault of the Captain Black.[8]

### 8.

Since the nominal libelant has settled its claim with respondent F & S Boat Corporation, and the latter has become libelant through subrogation, no decree will be entered for Williams-McWilliams Industries, Inc. against F & S Boat Corporation.

### 9.

Let judgment be entered dismissing the libel of Williams-McWilliams Industries, Inc. against the M/V Vulcan and Sabine Towing & Transportation Company, Inc., libelant to pay the costs.

---

4. Navegacion Castro Riva v. The M/C Nordholm, 178 F.Supp. 736 (ED La.–1959) ; The Pillar De Larrinaga, 42 F. Supp. 648 (ED Pa.–1942); Long Island R. R. Co. v. Killien, 67 F. 365 (CA 2–1895); Ocean S. S. Co. v. United States, 39 F.2d 553 (CA 2–1930); The Alcinous, 39 F.2d 553 (CA 2–1930).

5. Inland Rules, Art. 18, Rule VIII reads in part: The vessel ahead shall in no case attempt to cross the bow or crowd upon the course of the passing vessel. Compania Maritima Madrilena, S.A. v. The M.S. Dagan, et al., 183 F.Supp. 528 (SD Fla–1959), aff'd 283 F.2d 393 (CA 5–1960).

6. Griffin on Collision, Secs. 200, 201 and 258. The Pennsylvania, 19 Wall. 125, 136, 86 U.S. 125, 22 L.Ed. 148.

7. The Mormacmoon, 55 F.Supp. 636 (D. C.Mass.–1944); Oil Transfer Corp. v. Atlantic Tankers, Ltd., 194 F.Supp. 920 (SD NY–1961); aff'd 2 Cir., 297 F.2d 367.

8. Barrois Bros. v. Lake Tankers Corp., 188 F.Supp. 300 (ED La.–1960).

10.

Let judgment be entered dismissing the cross-claim of Sabine Towing & Transportation Company against F & S Boat Corporation and the M/V Captain Black; the costs to be paid by F & S Boat Corporation.