**OIL TRANSFER CORPORATION, as owner of the M/V Otco Bayway, Libelant-Appellant,**

v.

**ATLANTIC TANKERS, LTD., as owner of the Atlantic Prince, Respondent-Appellee.**

No. 106, Docket 27090.

United States Court of Appeals Second Circuit.

Argued Dec. 4, 1961.

Decided Jan. 3, 1962.

Macklin, Speer, Hanan & McKernan, New York City (John C. Hart, New York City, of counsel), for libelant-appellant.

Foley & Martin, New York City (John H. Hanrahan, Jr., New York City, of counsel), for respondent-appellee.

Before WATERMAN, SMITH and MARSHALL, Circuit Judges.

PER CURIAM.

The two tankers involved in this litigation collided in the Kill van Kull, one of the busier waterways in the New York Harbor area, at about 4:45 A.M. on January 6, 1959. It was a cold night with the temperature at about 10° above zero, Fahrenheit.

The Otco Bayway was adrift broadside in the ship-channel. She was ice-encrusted, the ice in some places being as much as two feet thick. Her anchors were frozen forward, her capstans and windlasses, the deck claw holding the anchor chain and the hawser pipe were all ice-encrusted. It was planned that she would dock at Constable Hook, but, preparatory to docking, it was discovered that her engines could not be stopped when the bridge signalled such an order. She avoided hitting the dock, swung back into the channel, and thereafter her Chief Engineer disconnected her fuel lines. She was neither at anchor, nor with power, at the time of the collision.

The Atlantic Prince was under way, escorted by two tugs, at a speed of 5 or 6 knots an hour when about a mile and a half from the Otco Bayway.

The versions of what followed that led up to the collision were, as stated by the trial judge, 194 F.Supp. 920, 923, dissimilar. Suffice it for now to say that libelant-appellant maintains on appeal "that the sole cause of the collision was the failure of the Atlantic Prince to pay any attention to her navigation. She ran down a motionless vessel because she didn't look, didn't see and didn't hear"— and that respondent-appellee maintains on appeal "that the sole cause of the collision was the gross negligence of the Otco Bayway and her general apathy at and prior to the collision."

The trial judge made detailed findings of fact and extracted therefrom his conclusion that the negligence of both vessels equally contributed to the collision. These findings and conclusions are contained in his written opinion, reported at 194 F.Supp. 920. We affirm the interlocutory decree based thereon.

The Atlantic Prince, being guilty of statutory faults, was unable to rebut the presumption that this guilt contributed to the collision. It could only countercharge that the collision was caused by the poor seamanship shown by the crew of the Otco Bayway. Despite the obvious peril to shipping that she permitted herself to be, the Otco Bayway defends herself by emphasizing her helplessness and would have us overlook the fact that this helplessness was created when her fuel lines were disconnected. Nor is the finding of fact by the trial judge that she sounded a series of short blasts rather than a continuous sound a "clearly erroneous" finding. Before reaching his result the judge carefully weighed and discussed the conflicting testimony of many witnesses, 194 F.Supp. 920, 927–928. This statutory fault the Otco Bayway seeks to overcome by claiming the fault was prior in time to the faults of the Atlantic Prince; that her helplessness was clearly observable, or ought to have been clearly observable, by the Atlantic Prince; and that therefore the doctrine announced in The Syosset, 71 F.2d 666 (2 Cir., 1934); and in The Bellhaven, 72 F.2d 206 (2 Cir., 1934); and in Chemical Transporter, Inc. v. M. Turecamo, Inc., etc., 290 F.2d 496 (2 Cir., 1961), applies to her, and her negligence was not a contributing cause of the collision. This claim is invalidated by the finding that this helplessness was not conveyed to the Atlantic Prince by proper signals, and the Atlantic Prince, though burdened, could hardly be expected to assume that the Otco Bayway, broadside of one of the busiest channels in the harbor, could not make headway. Actually, the Otco Bayway was in motion, for, according to the facts set up in her brief, at 4:20 A.M. she was broadside to the wind headed in a westerly direction under the influence of the elements, and

prior to that time she, left to the mercy of the northwest wind, had begun to drift toward Staten Island—in summary, she was drifting away from the Atlantic Prince.

Decree affirmed.