**ZELLER MARINE EQUIPMENT, INC.,** as owner of SCOW ZELLER NO. 54, Libellant,

v.

**SS CHEMICAL TRANSPORTER, TUG ANN McALLISTER,** their engines, etc., Chemical Transporter, Inc. and McAllister Brothers, Inc., Respondents.

**FREDERICK STARR CONTRACTING COMPANY,** as operator of deck SCOW MANYA STARR NO. 55, Libellant,

v.

**SS CHEMICAL TRANSPORTER, TUG ANN McALLISTER,** their engines, etc., Chemical Transporter, Inc. and McAllister Brothers, Inc., Respondents.

**CHEMICAL TRANSPORTER INC.,** as owner of SS CHEMICAL TRANSPORTER, Libellant,

v.

**McALLISTER BROTHERS, INC., TUG ANN McALLISTER,** etc., Respondent.

**SCHIAVONE–BONOMO CORPORATION,** Libellant,

v.

**McALLISTER BROTHERS, INC.,** Chemical Transporter Inc., and Turecamo Coastal & Harbor Towing Corporation, Respondents.

Nos. 65 AD 444, 454, 494 and 740.

United States District Court
S. D. New York.

June 10, 1969.

On Motion to Amend Findings and
Conclusions July 2, 1969.

Macklin, Hanan & McKernan, New York City, for libellant and respondent Chemical Transporter Inc.

Purdy, Lamb & Catoggio, New York City, for respondent McAllister Brothers, Inc.

Foley & Martin, New York City, for libellants Frederick Starr Contracting Co. and Zeller Marine Equipment, Inc.

John P. D'Ambrosio, New York City, for libellant Schiavone-Bonomo Corp.

Renato C. Gialeorenzi, New York City, for respondent Turecamo Coastal & Harbor Towing Corp.

## MEMORANDUM

CROAKE, District Judge.

Early in the morning of March 5, 1965 the SS CHEMICAL TRANSPORTER, proceeding south in Newark Bay, collided with the scow ZELLER No. 54, proceeding north in tow behind the tug ANN McALLISTER. The collision gave rise to four actions which were tried on the issue of liability before this judge sitting without a jury. The parties to the first three actions agreed in the pre-trial orders and again in open court to have damages assessed at their expense by a special commissioner. The amount of damages was stipulated in the fourth action. Having weighed the testimony, the court finds that the damages resulting from the collision should be borne equally by the CHEMICAL TRANSPORTER and the ANN McALLISTER.

The sky was clear over Newark Bay at 0425 in the morning of March 5; a light wind was blowing from the northeast. The tide was still ebbing a little or at low slack. The SS CHEMICAL TRANSPORTER, a 524 x 68 foot tanker, was proceeding south in the nearly straight channel, roughly 525 feet wide, that runs through Newark Bay. Moving northward on the other side of the Central Railroad of New Jersey Bridge was the 75 x 23 foot tug ANN McALLISTER with two 120 x 38 foot scows, the ZELLER No. 54 and the MANYA STARR No. 55, in tow on a 100 foot hawser. Both scows were loaded with iron scrap. All the vessels were displaying the proper lights.

The Central Railroad of New Jersey Bridge is a four-track bridge with two draws some 100 feet or more apart. The west draw has a horizontal clearance of 216 feet and the east has a clearance of 134 feet. When the draws are down, the vertical clearance is 35 feet above mean high water. The roadbed is supported by transverse concrete abutments. The center pinning of the bridge consists of two towers roughly 150 feet high and the bridge control house located above the tracks, and is supported by three concrete abutments.

The channel through Newark Bay does not run exactly north to south, but more north-northeast to south-southwest. The Central Railroad bridge crosses the channel in an east-west direction. The bridge and the channel thus intersect to form an angle of about 65 degrees. Because of this angle, it is not possible to look through the west draw of the bridge and see much of the channel on the other side; it is possible

to look through the east draw. From 300 to 400 feet and further south of the bridge one can look up the channel through the east draw at least to beacon "9," located about 1200 yards above the bridge on the west side of the channel.

At roughly 0415 the pilot of the CHEMICAL TRANSPORTER had his office call the bridge captain to find out when the ship could pass through. The pilot learned that a train was to cross the bridge at 0426; he may have been told, or would have known, that he had to be through the bridge by 0424 in order for it to be closed in time.

When the CHEMICAL TRANSPORTER reached beacon "9" at 0419, the bridge was closed, so it stopped its engines. While stopped, the pilot, the captain, and the mate, all on the bridge, spotted lights through the east draw. Captain Louis B. Evans, the pilot, and Captain John H. Moller, the master, testified that they thought there may have been white staff lights, indicating a tow, see 33 U.S.C. § 173(a), but they were not positive. Tr. 34, 89. They thought the vessel or vessels were headed for the east draw. At 0419 the ANN McALLISTER, which was proceeding at 2 to 2.5 miles per hour or about 200 feet per minute, must have been about 400 yards south of the bridge. Its position and heading could easily have given the illusion that it was headed for the east draw.

■ In light of subsequent events, it appears that the testimony of Captain Joseph Needham of the ANN McALLISTER as to his course was correct. He was proceeding in the middle of the channel headed toward the center abutment of the bridge and expecting the wind and tide to take him through the west draw. Tr. 110, 116–117. Ships and tugs prefer to use the west draw because it is wider and use it when headed north unless a southbound vessel is about to pass through it. Using the west draw northbound is not in itself a violation of the narrow channel rule, 33 U.S.C. § 210, nor negligence as a matter

of law. United States v. The J. A. Cobb, 283 F.2d 754 (2d Cir.1960). Although the tug and tow could have passed through the east draw without its being opened, the pilot and master should have recognized the possibility that the ANN McALLISTER was headed for the west draw. Their discussing its direction indicates that they did recognize it.

The draw began to open at 0420. The bridge captain, Captain Van Jura, and the pilot of the CHEMICAL TRANSPORTER, Captain Evans, testified that its opening was preceded by an exchange of signals between the ship and bridge. Tr. 33–34, 132. Captain Moller of the CHEMICAL TRANSPORTER testified that the exchange did not take place, tr. 87, and Captain Needham on the ANN McALLISTER did not hear it. Tr. 107. Comparing the demeanor and testimony of Captains Evans and Van Jura against the testimony of Captain Moller, this court finds that the three-blast whistle exchange did not take place.

At 0421 the CHEMICAL TRANSPORTER began moving half ahead (about eight or nine knots) in the starboard side of the channel and the lights of the ANN McALLISTER were obscured by the bridge. According to the testimony of Captains Evans and Moller, she sounded a single blast of her whistle to indicate to the vessel whose lights she had seen that she intended a port-to-port passing. See 33 U.S.C. § 203, Rule I; transcript 36–37, 96. Captain Moller entered the signal in the deck log. Captain Needham did not hear the signal; the bridge captain does not recall it. Tr. 107, 135. We do not consider Captain Moller's failure to mention the signal in Coast Guard and company reports of probative significance since he failed to give other information that was sought. We are inclined to accept the testimony of the captain and pilot of the CHEMICAL TRANSPORTER who, unlike the bridge captain, would be expected to notice and recall the signal. Since the CHEMICAL TRANSPORTER could not see the ANN McALLISTER, sound-

ing the signal shows that it was not certain that the tug was headed for the east draw.

The CHEMICAL TRANSPORTER'S signal at 0421 was not answered and it was repeated a minute later, again with no response. The evidence on whether this second blast was sounded is the same as the evidence regarding the first blast. Tr. 37, 96. The CHEMICAL TRANSPORTER reduced her speed from half to slow ahead (or about three or four knots not including headway) in order to have steerage going through the bridge. Tr. 37.

Captain Needham testified that he had neither seen the CHEMICAL TRANSPORTER nor heard its signals until he was about to enter the west draw. Tr. 107, 120. Then he saw the CHEMICAL TRANSPORTER coming around the abutment on a collision course. He took what was apparently the only evasive action available to him. He sounded two whistles, indicating a starboard to starboard passing, 33 U.S. C. § 203, Rule I, and cut across the bow of the CHEMICAL TRANSPORTER. Tr. 71, 103. The ANN McALLISTER passed between the west abutment of the west draw and the CHEMICAL TRANSPORTER. Tr. 72. Captain Needham's evasive action and the safe passage of the tug itself through the draw indicate that the CHEMICAL TRANSPORTER entered the east (its port) side of the west draw.

There is contradictory testimony as to when the CHEMICAL TRANSPORTER resighted the ANN McALLISTER. Captain Moller testified in his deposition that the tug was seen at 0422 before the second passing signal was given. Tr. 96. Captain Evans, however, testified that the sighting took place just before he sounded the alarm signal and reversed the CHEMICAL TRANS-PORTER'S engines. Tr. 38. Since Captain Needham's testimony indicates no lag between his sighting the CHEMI-CAL TRANSPORTER and that ship's sounding of the danger signals, tr. 120, we accept Captain Evans' recollection that the CHEMICAL TRANSPORTER resighted the ANN McALLISTER at about 0423.

At 0423½, the CHEMICAL TRANS-PORTER went full astern and sounded the danger signal and backing signal. It was to no avail. At 0425, just south of the draw, the CHEMICAL TRANS-PORTER cut through the hawser and its port bow struck the forward end of the ZELLER No. 54, causing it to hit the MANYA STARR No. 55, The port quarter of the CHEMICAL TRANS-PORTER struck the bridge. The ZELLER listed, dumping its cargo overboard, and capsized.

■ This accident would probably not have occurred if the captains and pilot had used ordinary care. The ANN McALLISTER was guilty of several statutory violations which contributed to the happening of the accident. If there had been a lookout on duty or if the captain had been attentive, the ANN McALLISTER would have sighted the CHEMICAL TRANSPORTER when it was stopped for two minutes at beacon "9" and headed for the east draw. 33 U.S.C. § 221. Sun Oil Co. v. S.S. Georgel, 245 F.Supp. 537, 545 (S.D.N.Y. 1965), aff'd per cur., 369 F.2d 406 (2d Cir.1966). If there had been an attentive lookout, he would have heard the CHEMICAL TRANSPORTER'S passing signals; he would have seen the bridge starting to open nearly two minutes before the ANN McALLISTER entered the draw (instead of as it entered the draw, tr. 102), and a danger warning could have been sounded. Moore-Mc-Cormack Lines, Inc. v. S. S. Portmar, 249 F.Supp. 464–470 (S.D.N.Y.1966). And if the ANN McALLISTER had answered the CHEMICAL TRANSPORT-ER'S passing signals, 33 U.S.C. § 203, Rule I, or sounded the required signal when approaching a blind bend, 33 U.S. C. § 203, Rule V, the CHEMICAL TRANSPORTER would have been appraised of its intention to enter the west draw. If the ANN McALLISTER had complied with sound navigational prac-

tices, the collision would not have occurred.

■ The CHEMICAL TRANSPORTER, although not as inattentive as the ANN McALLISTER, failed to act on the information it had. When no response was received to the first passing signal, and most certainly when none was received to the second one, the CHEMICAL TRANSPORTER should have taken immediate precautionary measures. The pilot and master knew that there was a vessel on the other side of the bridge, one that might have a tow and be difficult to maneuver. They knew that tugs with tows preferred to use the west draw since it was wider. And, most importantly, they knew from the absence of a response that the captain of the vessel on the other side was inattentive. The CHEMICAL TRANSPORTER nonetheless negligently continued to move forward and did not sound the danger signal nor reverse its engines for one and one-half minutes. Esso Standard Oil Co. v. Oil Screw Tug Maluco I, 332 F.2d 211, 214 (4th Cir. 1964); James McWilliams Blue Line, Inc. v. Card Towing Line, Inc., 168 F.2d 720, 721 (2d Cir. 1948). In spite of this disregard of caution in the face of danger, the accident might have been avoided if the CHEMICAL TRANSPORTER had passed through the draw on the starboard side as required by statute. 33 U.S.C. § 210; United States v. The J. A. Cobb, supra.

■ Counsel for the ANN McALLISTER argues that any negligence of the tug was merely a condition, not a cause, of the accident and that the last clear chance doctrine is applicable. We disagree. The ANN McALLISTER was guilty of statutory violations and thus had the burden of showing that satisfying the statutes would not have avoided the accident. Oil Transfer Corp. v. Atlantic Tankers, Ltd., 194 F.Supp. 920 (S.D.N.Y.1961), aff'd 297 F.2d 367 (2d Cir.1962). She has not only failed to do that with respect to some of the violations, but we find that compliance with the statute may well have prevented the

collision. By being attentive to the draw rising and sounding a warning signal, or responding to the CHEMICAL TRANSPORTER'S signals, the ANN McALLISTER would have caused the CHEMICAL TRANSPORTER to slow down, reverse, or at least pass through the draw as far to starboard as possible. Because compliance with these statutes even after the CHEMICAL TRANSPORTER became aware of the ANN McALLISTER'S inattention could have prevented the accident, the doctrine of last clear chance is inapplicable and the cases cited by the tug's counsel are distinguishable. The situation here of one vessel compounding the faults of the other is quite similar to the situation in Chotin, Inc. v. S.S. Gulfknight, 266 F. Supp. 859 (E.D.La.1966), aff'd per cur. sub nom., Gulf Oil Corp. v. Chotin, Inc., 402 F.2d 293 (5th Cir.1968), where mutual liability was found.

■ Since both the CHEMICAL TRANSPORTER and the ANN McALLISTER were mutually at fault, the resultant damages should be equally divided. Gulf Oil Corp. v. Chotin, Inc., supra; Esso Standard Oil Co. v. Oil Screw Tug Maluco I, supra; James McWilliams Blue Line, Inc. v. Card Towing Line, Inc., supra.

FINDINGS OF FACT

1. The SS CHEMICAL TRANSPORTER collided with the scow ZELLER NO. 54 being towed by the tug ANN McALLISTER just south of the Central Railroad of New Jersey Bridge in the Newark Bay channel at 0425 on March 5, 1965.

2. Just prior to the accident, a) there was no lookout posted on the ANN McALLISTER; b) the captain and/or crew of the ANN McALLISTER could have seen the CHEMICAL TRANSPORTER and heard her signals, but did not; c) the ANN McALLISTER failed to respond to the passing signal of the CHEMICAL TRANSPORTER; d) the ANN McALLISTER did not give any signal when the draw started to rise; and e) the ANN McALLISTER did not

give any signal when approaching the blind turn caused by the bridge.

3. The CHEMICAL TRANSPORTER, a) took no precautionary steps after failing to receive a response to its signal from the vessel it knew was on the other side of the bridge, which it knew could have been a tug, and which it should have known might have been headed for the west draw; and b) entered the port side of the west draw.

4. The acts and omissions stated in findings 3 and 4 resulted in damage to the ZELLER NO. 54, the MANYA STARR NO. 55, and the CHEMICAL TRANSPORTER, and in the loss of cargo on the ZELLER NO. 54 owned by Schiavone-Bonomo Corporation.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and over the subject matter.

2. The acts and omissions referred to in findings 2 and 3 were negligent.

3. The SS CHEMICAL TRANSPORTER and the ANN McALLISTER are each liable for one-half the damage to the ZELLER NO. 54, the MANYA STARR NO. 55 and for the loss of the cargo of scrap iron; the ANN McALLISTER is liable for one-half the damages done to the CHEMICAL TRANSPORTER.

Interlocutory judgments shall be entered in accordance with Conclusion No. 3 and the stipulation of the parties approved by the court on May 21, 1969.

In accordance with the stipulation of the parties, submit decree on appointment of a commissioner to determine damages in 65 Ad. 444, 454 and 494.

So ordered.

### On Motion to Amend Findings and Conclusions

### MEMORANDUM

The ANN McALLISTER has moved before this court for amendments of the findings of fact and conclusions of law under which she and the CHEMICAL TRANSPORTER were each held liable for one-half the damages in the above-titled actions. The court makes additions to, and amendments of, its findings only to the extent indicated by the discussion below without altering its conclusion that both vessels were at fault.

At 0404 the CHEMICAL TRANSPORTER passed under the Lehigh Valley Railroad Bridge with her engines at half ahead. From then until 0419 when she stopped her engines near beacon "9," shown by Coast Guard chart number 285 to be about 1200 yards north of the Central Railroad of New Jersey Bridge, the following orders were given:

| | |
|---|---|
| 0411 | slow ahead |
| 0412 | half ahead |
| 0412½ | full ahead |
| 0417 | half ahead |

From 0419 until 0421 when the engines were put at half ahead, the CHEMICAL TRANSPORTER would have had headway. The photographs received as CHEMICAL TRANSPORTER's Exhibit 1 show that, although she was not dead in the water, the CHEMICAL TRANSPORTER could have been sighted by the ANN McALLISTER during this two-minute interval.

The record does not permit findings of the speeds at which the CHEMICAL TRANSPORTER was moving from the time it passed under the Lehigh Valley Bridge until the collision. The speeds it was capable of at different commands to the engine room are mentioned in the memorandum of decision, but the record does not provide a means of computing her headway. Nor is any finding made that the speeds at critical times were excessive. The cases cited by counsel for the ANN McALLISTER in his post-trial brief involved circumstances different from those found here. As Judge Learned Hand wrote in one of them,

Speed is clearly relative to the situation of the ship; what is proper at sea is ordinarily improper in a harbor, and one harbor speed should differ from another. The George H. Jones, 27 F.2d 665, 667 (2d Cir.1928).

Moreover, as already found, the fault of the CHEMICAL TRANSPORTER was that it did not take measures to avoid the collision after sighting the ANN McALLISTER; its speed prior to the sighting, even if excessive, was not causally related to the accident. Even if a finding were made charging the CHEMICAL TRANSPORTER with speeding, the end result of the case would not be different for, just as in The Rosedale, 88 F. 324 (S.D.N.Y.1898), aff'd sub nom., The Oregon, 92 F. 1021 (2d Cir. 1899), cited by counsel for the ANN McALLISTER, speeding by one vessel and failure to keep a proper lookout on the other would have combined to cause the accident. It should be noted, however, that to the extent the "immediate precautionary measures" (Memorandum of Decision 12) which the CHEMICAL TRANSPORTER should have taken included reducing its speed, the speed of the CHEMICAL TRANSPORTER was excessive.

 The ANN McALLISTER argues that any passing signal given by the CHEMICAL TRANSPORTER was illegal since the vessels were out of sight of each other. 33 U.S.C. § 203, Rule IX, and that therefore it did not have to be answered. The legality of the signal is not pertinent. The signal should have alerted the ANN McALLISTER to the dangers that lay ahead. A tug is not exonerated from the duty of keeping a proper lookout simply because of its slow speed; a lookout is required on all vessels, particularly at night. 33 U.S.C. § 221; Cenac Towing Co. v. Keystone Shipping Co., 404 F.2d 698, 702 (5th Cir.1968); Sun Oil Co. v. S. S. Georgel, 245 F.Supp. 537, 545 (S.D.N.Y.1965), aff'd, per curiam, 369 F.2d 406 (2d Cir. 1966); Northern Petroleum Tank Steamship Co. v. City of New York, 181 F.Supp. 192, 195 (S.D.N.Y.), modified on other grounds, 282 F.2d 120 (2d Cir. 1960). Had the CHEMICAL TRANSPORTER's signals been heard and acted on, the ANN McALLISTER could have prevented the accident.

There is no evidence in the record to support the contention now put forward that the opening of the draw was not apparent until a minute after the operation was commenced. Even if there were, the ANN McALLISTER still took no steps to avoid the oncoming danger.

Rule V of 33 U.S.C. § 203 is relied on by analogy.

Judgments will accordingly be entered in each of these actions as directed in the memorandum of decision filed June 11, 1969; final judgment shall be entered in 65 AD 740 in accordance with the stipulation of the parties approved by the court on May 21, 1969.

So ordered.